Mr. Justice Moore
delivered the opinion of the Court.
*125 The plaintiff in error will be referred to as the People, and the defendant in error as the defendant.
On October 10, 1963, an information was filed on behalf of the People against the defendant charging him with murder, conspiracy to commit murder, robbery and conspiracy to commit robbery. As to all counts of the information the defendant entered pleas of not guilty and not guilty by reason of insanity at the time of the alleged commission of the crime. Thereupon the court ordered the defendant confined at the county jail to be examined there by a court appointed doctor, namely, Doctor William F. Stephenson, who was ordered to make his report to the court. On November 29, 1963, Dr. Stephenson reported to the court that, in his opinion, the defendant was legally insane at the time of the alleged commission of the crimes for which he was charged.
On December 18, 1963, the case was before the trial court to be set for trial, at which time the following colloquy took place:
“THE COURT: I would like to see if we couldn’t get this set as soon as possible. First of all, we would find out if it will be a contested sanity hearing, or a non-contested sanity hearing?
“MR. CARELLI [the deputy district attorney]: Your Honor, we would request that the matter be set down as a non-contested sanity hearing. We recommend that the matter be heard to a jury. At this time, we do not think there will be any contest on the issues in this matter.
“THE COURT: We will have to check and see whether the doctor will be available on short notice, Dr. Stephenson.
“THE COURT: All right, at 2:00 o’clock. I think it will only take less than an hour altogether. Let’s set it, then, and we had better call Dr. Stephenson. In fact, you people had better wait until the Clerk calls Dr. *126 Stephenson, and be sure he is available Friday at 2:00 o’clock. * * *”
On Friday, December 20, 1963, the trial was held on the question of the sanity of the defendant. A jury was selected and sworn. The attorney for the defendant called Dr. Stephenson who was qualified as an expert in the field of “diagnosing and treatment of emotional and mental disorders.” He had examined the defendant at considerable length on four separate occasions. In explanation of these examinations the following testimony was given:
“Q. Doctor, now will you tell the jury what you did when you saw Mr. Anderson at the County Jail?
“A. I talked to him, I observed him. I listened to him. I tried to piece together an account of his life. All the experiences he has had in his life. I asked him about symptoms, his attitude, his feelings, his functionings.” He then went into great detail concerning the examination to which the defendant was subjected and concluded his direct testimony as follows:
“Q. And is there any particular brand of insanity or any particular label that would fit this type of psychosis?
“A. Yes, I made the diagnosis of paranoid state.
“Q. What were your reasons for that diagnosis?
“A. I felt he showed many of the symptoms consistent with this diagnosis. He had delusions. I could go through it technically. He had ideas of reverence. He was impulsive. He did not have hallucinations, but he had something close to hallucinations. All of these adding up to a diagnosis of psychosis in a paranoid state.
“Q. And in your examination of this boy, did you reach a conclusion as to whether or not he was suffering from the same malady on October 5, 1963?
“A. Yes.
“Q. And what is he suffering from now?
“A. The same thing as at the time of my examinations.
*127 “Q. What’s that?
“A. At the time of my examinations?
“Q. Yes. Will you tell us, sir, if you have an opinion of whether or not the defendant Patton Richard Anderson is a person who was so diseased in mind at the time of the act complained of as to be incapable of determining right from wrong with respect to that act or has suffered, such an impairment of mind rendering him incapable of choosing a right and from refraining from doing a wrong?
“A. Yes, I have an opinion.
“Q. What is your opinion, sir?
“A. I feel he is legally insane.
“Q. And that is at the present time?
“A. Yes.
“Q. And at the time of the alleged commission of the offense, October 5th, 1963?
“A. Yes.
“Q. Is that true, sir?
“A. Yes.”
The district attorney cross-examined the doctor and again the nature and extent of his examination was described in detail. The cross-examination was concluded with the following testimony:
“Q. (by Mr. Urso) And then, Doctor, it is your opinion that the defendant was insane at the date of the alleged commission of this crime, is that correct?
“A. Yes.
“Q. And you base that upon your examination of the defendant alone?
“A. Yes; examination, yes.
“Q. And that that condition remains at this time?
“A. Yes.”
No further evidence was presented. Both sides having rested the following then occurred:
“MR. ERICKSON: At this time the defendant moves for a directed verdict of finding him not guilty by rea *128 son of insanity at the time of the alleged commission of the offense, and not guilty by reason of insanity at the present time.
“THE COURT: All right. Does the District Attorney wish to argue the motion?
“MR. URSO: Just one moment.
“THE COURT: Yes.
“MR. URSO: Your Honor, we have nothing to offer. However, it is the opinion that the only question before the Court is the question of this defendant’s insanity at the time of the alleged commission of the offense. We do feel that since the Doctor is an expert, however, even the testimony of an expert is subject to scrutiny by jury. Therefore, we feel the question should be submitted to them for their determination.
“THE COURT: The Court understands the law to be that there, of course, is a presumption of sanity in this case. We have had definite testimony rebutting that presumption, an expert opinion that the defendant was insane on the date of the alleged commission of the offense, and there is no evidence other than the doctor’s testimony. The presumption has been sufficiently rebutted, and the law, of course, is that the People must prove beyond a reasonable doubt that the defendant was sane on that date.
“The Court feels that as a matter of law there is insufficient evidence to submit this matter to a jury; that we have only heard evidence from one witness, and that is that he was insane. The Court feels there is not any evidence at this time sufficient to submit that matter to the jury, and that as a matter of law the Court should direct the jury to find the defendant Patton Richard Anderson not guilty by reason of insanity at the time of the alleged commission of the offense herein to wit the 5th day of October, A. D., 1963.”
Judgment entered upon the directed verdict and the defendant was committed to the State Hospital at *129 Pueblo. The People are here on writ of error, and as grounds for reversal argue that:
“1. The Trial Court erred in directing a verdict of not guilty by reason of insanity at the time of the alleged commission of the crime, contrary to the provisions of C.R.S. 1953, 39-8-4 (1), as amended.
“II. The Trial Court erred in not allowing the jury to determine the weight to be given the testimony of the Court-appointed psychiatrist in that the entirety of the testimony raised a question of fact for them to consider.”
On behalf of the defendant it is asserted that:
“I. The evidence presented to the Court was such that reasonable minds could not differ, and under such circumstances, the directed verdict was proper.”
In other words, we must consider whether, under the state of the record before us, we could have sustained a verdict which found that the defendant was sane at the time the alleged offense was committed.
The instant case falls within the rationale of Graham v. People, 95 Colo. 544, 38 P.2d 87, from which we quote the following:
“The people offered no evidence in rebuttal. If any evidence was obtainable, from either expert or non-expert witnesses, that would show or tend to show that the defendant was sane, it was the duty of counsel for the people to produce it; but no such evidence was offered, and in the circumstances its absence is significant. The strong showing of insanity made by the testimony of -reputable disinterested and impartial physicians who were selected not by the defendant but by the court, was not met even by one word of testimony to the contrary. The verdict is incomprehensible, save upon the supposition that the brutal character of the killing so aroused the passion and prejudice of the jurors as to cause them to overlook or disregard the court’s instructions.”
In the Graham case the issues raised by the pleas of *130 not guilty and not guilty by reason of insanity were submitted in one trial. The jury found the defendant to be sane, and convicted him of murder. This court reversed the judgment entered on that verdict. In the instant case a jury verdict which found the defendant to be sane would find no support in the evidence, and could not be upheld.
The judgment accordingly is affirmed.