The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Abel Gebre LAEKE, Defendant–
Appellant.

No. 08CA0079.

Colorado Court of Appeals,
Div. II.

Nov. 25, 2009.

As Modified on Denial of Rehearing
Feb. 4, 2010.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

The issue in this criminal case is whether Abel Gebre Laeke, a mentally ill defendant, has a right to a jury trial under Colorado's insanity statute, section 16–8–105.5(2), C.R.S. 2009, even after the prosecution concedes his insanity, because he objected to his counsel's entry of a plea of not guilty by reason of insanity (NGRI), contended he did not commit the underlying charge, and did not personally waive a jury trial. Because we conclude that he does, we reverse the trial court's judgment finding him insane and committing him to the Colorado State Mental Hospital in Pueblo (CMHIP).

Defendant was charged with attempted sexual contact, a felony, and indecent exposure, a misdemeanor. Over his objection, his counsel entered an NGRI plea at his arraignment. The trial court provided defendant and his counsel with a copy of the requisite advisement form. Defense counsel signed the advisement form, but defendant refused to do so, objecting to the insanity plea. The trial court then provided an oral advisement to defendant. As in the written advisement, the court advised defendant that he had a right to a trial by jury or by the court on the issues raised by his NGRI plea. The court then ordered a mental evaluation.

Doctors at the CMHIP concluded that defendant was not competent to proceed. The court ordered defendant to remain at the CMHIP until he was restored to competency.

Following defendant's restoration to competency, the trial court ordered a sanity examination. After receiving the CMHIP sanity evaluation, it then held a hearing, during which the prosecution stipulated that defendant was insane on the date of the commission of the alleged offense. Defense counsel asked the court to accept the stipulation. Defendant objected, stating that he hoped "to prove that [he] didn't do this in trial."

Characterizing the hearing as a trial to the court, the court entered a finding that defendant was not guilty by reason of insanity and committed him to the CMHIP until he was restored to sanity. Following proceedings not relevant here, defendant obtained new counsel and filed this direct appeal.

Defendant contends that he had a constitutional and statutory right to a jury trial and that the trial court erred by entering a judgment of NGRI over his objection and without obtaining a personal jury trial waiver from him. We agree.

## I. Standard of Review

■ Defendant's contention regarding his right to a jury trial presents an issue of law, which we review de novo. *People v. Kriho,* 996 P.2d 158, 177 (Colo.App.1999). Statutory interpretation is also a question of law, warranting de novo review. *People v. Valenzuela,* 216 P.3d 588, 590 (Colo.2009).

We must give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People,* 27 P.3d 846, 851 (Colo.2001). When construing a statute, we look to the plain and ordinary language of the statute and if the statute is clear and unambiguous, we apply the provisions as written. *People v. Gallegos,* 240 P.3d 882, 884 (Colo.App. 2009). We give effect to every word so as not to render any term superfluous. *People v. Madden,* 111 P.3d 452, 458 (Colo.2005).

## II. Applicable Law and Analysis

### A. Insanity Statute

For offenses committed on or after July 1, 1995, when insanity is raised as a defense to a criminal charge, Colorado follows a unitary trial scheme, in which the issues of sanity are tried at the same time that criminal responsibility is determined. § 16–8–104.5(1), C.R.S. 2009 ("The issues raised by the plea of not guilty by reason of insanity shall be treated as an affirmative defense and shall be tried at the same proceeding and before the same trier of fact as the charges to which not guilty by reason of insanity is offered as a defense."); *People v. Bielecki,* 964 P.2d 598, 601–02 (Colo.App.1998). The plea of NGRI includes the plea of not guilty. § 16–8–103(1.5)(a), C.R.S.2009; *People v. Vanrees,* 125 P.3d 403, 408 (Colo.2005).

Under section 16–8–103(2), C.R.S.2009, defense counsel may, as she did here, raise the defense of insanity over the objection of the defendant. *See Hendricks v. People,* 10 P.3d 1231, 1236 (Colo.2000); *People v. Bergerud,* 203 P.3d 579, 584 (Colo.App.2008), (noting that *Hendricks* held "unique" the Colorado statute allowing defense counsel to suggest, and a trial court to interpose, an insanity defense over a defendant's objection), *rev'd on other grounds,* 223 P.3d 686 (Colo. 2010).

■ A court may accept an insanity plea from counsel over a defendant's objection, as it did here, after it conducts a "just determination" inquiry, in which it balances the public's interest in not holding criminally liable a defendant lacking criminal responsibility, and the defendant's interest in autonomously controlling the nature of his or her defense. *Hendricks,* 10 P.3d at 1241.

Every person is presumed to be sane, but once any evidence of insanity is introduced, the People have the burden of proving sanity beyond a reasonable doubt. § 16–8–106(2), C.R.S.2009.

After a court orders and receives a sanity evaluation, the court must "immediately set the case for trial." § 16–8–105.5(2). The statute then directs the procedure a court must follow at trial. In pertinent part, it states:

(3) When the affirmative defense of not guilty by reason of insanity has been raised, the jury shall be given special verdict forms containing interrogatories. The trier of fact shall decide first the question of guilt as to felony charges that are before the court. If the trier of fact concludes that guilt has been proven beyond a reasonable doubt as to one or more of the felony charges submitted for consideration, the special interrogatories shall not be answered. Upon completion of its deliberations on the felony charges as previously set forth in this subsection (3), the trier of fact shall consider any other charges before the court in a similar manner; except that it shall not answer the special interrogatories regarding such charges if it has previously found guilt beyond a reasonable doubt with respect to one or more felony charges. The interrogatories shall provide for specific findings of the jury with respect to the affirmative defense of not guilty by reason of insanity. When the

court sits as the trier of fact, it shall enter appropriate specific findings with respect to the affirmative defense of not guilty by reason of insanity. (4) If the trier of fact finds the defendant not guilty by reason of insanity, the court shall commit the defendant to the custody of the department of human services until such time as the defendant is found eligible for release.

Section 16–8–105.5(3)–(4), C.R.S.2009.

Accordingly, after the case proceeds to trial, the jury receives special verdict forms and must first decide a defendant's guilt or innocence on the underlying felony charges. If the jury finds a defendant guilty of one or more of those charges, it does not consider whether the defendant is insane or not. The rationale appears to be that the jury's determination on the underlying mens rea element of a felony crime necessarily answers the question whether a defendant had the capacity to form and did in fact form the necessary mens rea. *See* § 16–8–101.5(1)(a)–(b), C.R.S. 2009 (the test of insanity is whether a person was "so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong," or "suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged"); *Vanrees*, 125 P.3d at 408 ("if the defendant is neither insane nor mentally impaired, then the jury must decide the defendant's guilt on the merits, i.e., whether the prosecution has met its burden to prove that the defendant in fact committed the crime charged, which, of course, includes the required culpable mental state"); *People ex rel. Juhan v. Dist. Court*, 165 Colo. 253, 265, 439 P.2d 741, 747 (1968) ("Mental capacity to commit a crime is a material part of total guilt for there can be no crime without the [m]ens rea.").

If the jury finds a defendant not guilty, it then must answer special interrogatories and explain whether it found the defendant NGRI. If it did, the court must then commit the defendant to the custody of the Department of Human Services until the defendant is found eligible for release. If, however, the jury has found the defendant not guilty for a reason *other than* NGRI, the defendant then is discharged from custody.

Accordingly, here, had defendant proceeded to trial, the fact finder would have first considered his guilt on the underlying charges of attempted sexual contact under section 18–3–404(1)(a), C.R.S.2009. This is consistent with the statutory provision stating that the plea of NGRI includes a plea of not guilty. Only if the jury had found defendant NGRI would he then have been committed to the Department of Human Services. If the jury found he did not commit the act charged, or the prosecution failed to prove another element of the offense charged for a reason other than insanity, he then would have been discharged from custody.

### B. Right to Jury Trial

■■ A defendant facing a serious criminal charge has a constitutional right to a jury trial. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 23; *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Austin v. City & County of Denver*, 170 Colo. 448, 454, 462 P.2d 600, 603 (1969). Likewise, a defendant has a constitutional right to a jury trial on the issue of insanity where he or she has introduced some evidence of insanity. *See People v. Hill*, 934 P.2d 821, 829 (Colo.1997).

Section 16–10–101, C.R.S.2009, states in pertinent part that "[t]he right of a person who is accused of an offense . . . to have a trial by jury is inviolate and a matter of substantive due process of law as distinguished from one of 'practice and procedure.'" *See also* Crim. P. 23(a)(1) ("Every person accused of a felony has the right to be tried by a jury of twelve.").

### C. Application

■ The question we must consider is whether defendant had a right under the insanity statute to proceed to a jury trial, even after the prosecution conceded his insanity. We conclude that he did.

Here, under the unitary trial scheme set forth in the insanity statute, the fact finder determines substantive guilt for the charged offense. The prosecution charged defendant

with the substantive felony of attempted sexual contact, which triggered his federal and state constitutional rights and state statutory right to a jury trial. The plea of NGRI, when supported by some evidence of insanity (which it is clear defense counsel would have been able to introduce), also entitles a defendant to a jury trial. Indeed, the trial court correctly informed defendant that he had a right to a jury trial on the issues raised by the NGRI plea.

■ The issue then is whether defense counsel's request to the trial court to accept the prosecution's stipulation of insanity and the trial court's acceptance could waive that right to a jury trial over defendant's objection. We conclude they could not.

Some trial decisions implicate inherently personal rights that would call into question the fundamental fairness of the legal system if made by anyone other than the defendant. *Arko v. People*, 183 P.3d 555, 558 (Colo.2008); *see generally Bergerud*, 203 P.3d at 583; John M. Burkoff, *Criminal Defense Ethics Law and Liability* § 5.5, at 134 (2d ed.2009); Wayne R. LaFave et al., *Criminal Procedure* § 11.6(c), at 796 (3d ed.2007) (no precise test separates fundamental decisions within a defendant's final control from strategic decisions left to counsel).

■ The right to a jury trial in a criminal case is inherently personal and can only be waived by the defendant. *People v. Curtis*, 681 P.2d 504, 511 (Colo.1984). Thus, while, as Crim. P. 23(a)(5)(I) explains, "[t]he person accused of a felony or misdemeanor may, with the consent of the prosecution, waive a trial by jury in writing or orally in court," Crim. P. 23(a)(5)(II)(b)(v) provides, "[t]he choice to waive a jury trial is the defendant's alone and may be made contrary to counsel's advice." Hence, a defendant must personally waive his or her right to a jury trial, and a statement by defense counsel does not operate as a waiver. *See Moore v. People*, 707 P.2d 990, 994–95 (Colo.1985).

We have found nothing in the federal or state constitutions, in the Rules of Criminal Procedure, or in the substantive Colorado law to indicate that a mentally ill defendant does *not* have to personally waive his or her right to a jury trial, even when the prosecution stipulates to a finding of insanity, where the defendant has objected to his counsel's entry of an NGRI plea and seeks to go to trial on the substantive offense.

*Hendricks v. People* does not require a different result. *Hendricks* holds that, over a mentally ill defendant's objection, his attorney can request and the court can enter an NGRI plea. But nothing in *Hendricks* allows counsel or the court to limit or abrogate a mentally ill defendant's personal right to a jury trial on the substantive offense or the sanity determination when he requests one. Nor does *Hendricks* discuss or limit the law requiring a defendant personally to waive the right to a jury trial.

Moreover, *Hendricks* recognizes a defendant's interest in autonomous decision-making with respect to his choice of defense: "an individual's interest in autonomously controlling the nature of [his] defense, provided that interest is premised on a choice that satisfies the basic rationality test, will predominate over the broader interest of society unless pressing concerns mandate a contrary result." 10 P.3d at 1243. The choice of a jury trial to determine substantive guilt of the charged offense or sanity satisfies the basic rationality test.

Accordingly, here, defendant was entitled to a jury trial on the substantive offense and on the sanity determination. There is no evidence in the record that defendant personally waived his right to a jury trial. Nor could defense counsel do so. Because defendant had a right to a jury trial on the substantive merits of the charged offense and the sanity determination, insisted on that right, and did not personally waive it, the proposed stipulation of insanity could not overcome it.

At first blush, this result may appear counterintuitive. After all, if the prosecution stipulates to the defense proffered by a defendant, what more can he ask? But here, the NGRI plea was entered by defense counsel over defendant's objection and over his request for a trial on the substantive charge, which clearly indicates defendant did not agree with this proposed result.

To be clear, we do not hold that the prosecution and a defendant can never stipulate to the NGRI conclusion and forgo a jury trial on either that issue or the elements of the substantive offense when there is a valid personal waiver. That factual predicate is not present here, just as whether defendant was competent to waive his jury trial right is not presented by the facts of this case. We hold only that defendant had a jury trial right that was not waived.

We next address and reject the People's arguments to the contrary.

## III. People's Arguments

The People assert that the trial court properly followed the applicable procedure in this case. They contend (1) that an entry of an insanity plea by counsel has the same effect as if the defendant had entered the affirmative defense plea himself and the NGRI plea is at odds with a not guilty defense; (2) that where evidence of insanity is presented and the People fail to meet their burden of proving sanity beyond a reasonable doubt, a trial court may properly take the case from the jury and direct a verdict of not guilty by reason of insanity, and thus a jury trial is not required under the statute; and (3) that the result in this case would be identical if a jury were sworn and the trial completed.

In support of these positions the People rely on various cases, including *People v. Anderson*, 159 Colo. 124, 410 P.2d 164 (1966); *People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972); *Les v. Meredith*, 193 Colo. 3, 561 P.2d 1256 (1977); and *People v. Morgan* 637 P.2d 338 (Colo.1981). However, all of these cases analyze, relate to, or support a pre-July 1, 1995 statutory scheme in which there were separate trials, first on sanity and then on guilt of the substantive offense (if the defendant was found sane). Thus, they are unpersuasive.

While we do not disagree that the statutory procedures and case law related to offenses occurring before July 1, 1995 provide "a framework for assessing the significance of the procedures that apply to [this defendant]," as the People assert, we do not find them persuasive because they are inconsistent with the unitary procedures implemented after July 1, 1995, for NGRI pleas.

For example, in *Morgan*, the court analyzed the statutory scheme in effect before 1995, under which the sanity of a defendant was determined first. In that context, the court stated that the issue of insanity is independent of the issue of guilt, and that "guilt or innocence plays no part in the resolution of the sanity issue." 637 P.2d at 341. Under the current statute, in contrast, guilt is to be determined first.

The People assert that in *Vanrees*, the supreme court indicated that sanity is still to be determined first, because it stated that "if the defendant is neither insane nor mentally impaired, *then* the jury must decide the defendant's guilt on the merits, i.e., whether the prosecution has met its burden to prove that the defendant in fact committed the crime charged." 125 P.3d at 408 (emphasis added). However, the court made this statement in the context of its general review of the insanity statute, and whether guilt or sanity is tried first was not at issue in that case. Accordingly, we do not view the court's statement in *Vanrees* to be applicable here.

In *Anderson*, the court held that a directed verdict of insanity was proper where the only evidence at trial was a court-appointed physician's testimony, without objection or contradiction, that when the defendant allegedly committed the charged crimes, he was legally insane. 159 Colo. at 129, 410 P.2d at 166–67. However, the defendant there did not and could not request, under the pre–1995 statute, that a jury first determine his substantive guilt for the charged offenses, as defendant can do under the post–1995 provisions. In addition, it appears clear from that case that the defendant personally sought the NGRI determination, since he moved for a directed verdict.

In *Kernanen*, the court noted that a presumption of sanity operates until some evidence to the contrary is presented, and that, once the presumption of sanity has been rebutted, a directed verdict should be granted to the defendant if the prosecution fails to put on any evidence of the defendant's sanity. 178 Colo. at 239–40, 497 P.2d at 11–12. Again, however, that result may obtain when

the issues of sanity and guilt are bifurcated and the jury must first consider sanity, without regard to the charged offense. However, that is not the procedure called for by the current statute.

■ We also note that directing a verdict for the defendant when he or she personally does not wish that result and has specifically requested a trial on the substantive offense would create constitutional concerns, because a directed verdict on the NGRI issue in these circumstances would usurp the jury's role in deciding whether the prosecution has proved, beyond a reasonable doubt, all of the elements of the substantive offense. *See generally Apprendi v. New Jersey*, 530 U.S. 466, 476–83, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). While a court could direct a verdict of insanity when the prosecution has failed to prove sanity beyond a reasonable doubt (in circumstances where a defendant has waived his right to a jury trial on his guilt of the substantive offense), it cannot, under the circumstances present in this case, direct a verdict that deprives the defendant of his asserted right to have the facts determined and the substantive law applied by a jury. *See Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, the judge may not direct a verdict for the State, no matter how overwhelming the evidence); *People v. Gracey*, 940 P.2d 1050, 1053 (Colo.App.1996) (same).

*People v. Grant*, 174 P.3d 798, 804 (Colo. App.2007), decided under the current statute, provides no support for the People's argument. There, the division, citing *Kernanen*, simply noted that, once the presumption of sanity has been rebutted by the production of some evidence of a defendant's insanity, a directed verdict of acquittal must be granted to the defendant if the prosecution fails to put on evidence of his or her sanity. Again, however, that result assumes that a defendant has moved for a directed verdict on that issue (or does not contest his attorney's decision to seek that result), and does not request a jury's determination regarding his

guilt of the charged offense, as defendant did here.

Contrary to the People's further contention, entering an insanity plea under the current statute is not at odds with a not guilty plea, because the statute specifically states that an NGRI plea includes a not guilty plea, and the jury has to determine substantive guilt. *See* §§ 16–8–103(1.5)(a), 16–8–105.5(3).

The People also contend that an NGRI plea is in the nature of confession and avoidance, under which a defendant admits the acts charged, but denies criminal culpability, citing *People v. Chavez*, 629 P.2d 1040, 1047 (Colo.1981). They assert that a plea of NGRI is therefore an admission of the charged acts. The *Chavez* court did so state; however, that view is inconsistent with the current statute under which the jury determines in one trial both substantive guilt and sanity and the NGRI plea includes a plea of not guilty. Here, moreover, defendant specifically denied committing the acts charged and his counsel entered the NGRI plea over his objection.

The People also appear to contend that defendant is bound by his counsel's choice to enter the NGRI plea and cannot disavow the plea or seek a jury's determination once the prosecution essentially confesses it. That defendant's counsel was authorized by statute to enter the NGRI plea over his objection surely cannot constitute the kind of knowing, voluntary, and intelligent or intentional waiver that is required before the jury trial right may be extinguished. *See People v. Norman*, 703 P.2d 1261, 1271 (Colo.1985) (holding that waiver of the right to a jury trial must be accompanied by a knowing, voluntary, and intentional waiver).

■ Relying upon *People v. Galves*, 955 P.2d 582, 583 (Colo.App.1997), the People also assert that a determination of insanity is a "complete defense to a criminal charge," and a "verdict of [NGRI], therefore, is an adjudication on the merits which absolves the defendant of criminal responsibility forever." To the extent the People rely upon this language to imply that defendant's case should be at an end once the prosecution stipulates to insanity or to imply that he is bound by

the result here regardless of whether his jury trial right was honored, we note that the continuing deprivation of defendant's liberty by indefinitely committing him to the CMHIP until his sanity is restored is the kind of deprivation that triggers due process protections. *See Foucha v. Louisiana*, 504 U.S. 71, 79–80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *People v. Stevens*, 761 P.2d 768, 771 (Colo.1988) (commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection); *People v. Garlotte*, 958 P.2d 469, 474 (Colo.App.1997) (the government's conduct in restraining an individual's freedom to act on his own behalf through institutionalization is a deprivation of liberty and triggers substantive due process protections). Unless only harmless error is involved, a result cannot be sound if a defendant's due process rights have been ignored in securing it. *See People in Interest of Hoylman*, 865 P.2d 918, 921–22 (Colo.App. 1993) (court's failure to provide respondent with his statutory right to a jury trial on his involuntary commitment to a mental health institution required reversal).

In addition, the division in *Galves* was considering whether a defendant could seek return of his seized personal property in the criminal proceeding originally brought against him. The division did not consider whether a defendant has a jury trial right under the unitary trial scheme.

The People also contend that the right to a jury trial attaches to the issue of guilt, and does not apply when, as here, a defendant is acquitted because of the insanity determination. *See People v. Riggs*, 87 P.3d 109, 112 (Colo. 2004)("A defendant who is acquitted of a crime by successfully asserting the defense of insanity must be committed to the custody of the Department of Human Services"). Certainly, a determination that a defendant is NGRI operates as an acquittal of the charged offense. But this conclusion does not prevent the attachment of a jury trial right where, as here, the statutory provision requires that *both* sanity and guilt be tried in the same proceeding, a defendant has asserted his desire to plead not guilty to the charged criminal offense, and he has invoked his right to a trial on guilt of the alleged conduct and alleged violation of the criminal statute. Moreover, because of the different liberty consequences resulting from a determination of insanity as opposed to a failure to prove the elements of the crime charged (commitment to the state hospital until restored to sanity, as opposed to immediate freedom), a defendant retains the right to have a jury decide his guilt or innocence of the crime charged.

We also reject the People's contention that because defendant does not challenge the entry of the NGRI plea itself, he cannot challenge the trial court's entry of the NGRI determination. It is true that, under section 16–8–103(2),

[i]f the court finds that the entry of a plea of [NGRI] is necessary for a just determination of the charge against the defendant, it shall enter the plea on behalf of the defendant, and the plea so entered shall have the same effect as though it had been voluntarily entered by the defendant himself.

But a statutory conclusion that the plea is deemed to have been made by defendant himself does not satisfy defendant's constitutional right to a jury determination of substantive guilt on the charged offense.

Pursuant to section 16–8–105.5(2), after receiving the sanity evaluation, the trial court was obligated, in lieu of a personal jury waiver by defendant, to set the case for a unitary jury trial. *See* §§ 16–8–103(1.5)(a), 16–8–104.5(1), 16–8–105.5; *Vanrees*, 125 P.3d at 408 (statute envisions three possible jury findings in a unitary trial related to substantive guilt and insanity); *Moore*, 707 P.2d at 994–95; COLJI–Crim. I:06 (2008) (indicating that the jury must determine insanity and substantive guilt following the unitary trial, as well as the requirement that the jury answer a special interrogatory when an NGRI plea has been entered and the jury has found defendant not guilty of the substantive offense).

There are no circumstances in which the personal right to a jury trial may be taken from a defendant merely because—as the People assert—the outcome might be identical. *See* § 16–10–101; *Apprendi*, 530 U.S. at 476–83, 120 S.Ct. 2348; *Curtis*, 681

P.2d at 511. No matter how overwhelming the evidence of insanity, the defendant remains entitled to a jury trial on guilt of the charged offense when he requests that such an issue be decided, because the fact finder "shall decide first the question of guilt as to felony charges." § 16–8–105.5(3). Any other interpretation of the statute does not give effect to every word of the statute, and we must avoid such an interpretation. *Madden*, 111 P.3d at 458.

The judgment is reversed and the case is remanded for a jury trial consistent with the procedures detailed in section 16–8–105.5.

Judge CARPARELLI and Judge RICHMAN concur.