2012 CO 13

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Abel Gebre LAEKE, Respondent.**

**No. 10SC151.**

Supreme Court of Colorado,
En Banc.

Feb. 27, 2012.

As Modified on Denial of Rehearing
March 26, 2012.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, Attorneys for Respondent.

Chief Justice BENDER delivered the Opinion of the Court.

¶ 1 In this appeal, we review the court of appeals opinion in *People v. Laeke,* —— P.3d —— (Colo.App.2010). That court held that when the prosecution has conceded that the defendant was insane at the time of the commission of the offense, a defendant has a statutory right under Colorado's insanity statutes to a jury trial on both the merits and the affirmative defense of insanity. The court of appeals further held that a defendant's constitutional rights are violated when a judgment of not guilty by reason of insanity (NGRI) is entered without a trial.

¶ 2 After reviewing Colorado's insanity statutes and our precedent concerning the affirmative defense of insanity, we hold that a defendant does not have a statutory right to a jury trial on the merits and his affirmative defense of insanity when he enters a plea of NGRI and the prosecution concedes that he was insane at the time of the commission of the offense. The legislature articulated its intent when it amended the insanity statutes. The explicit legislative wording did not include an intent to create a substantive statutory right to a jury trial on the merits and the affirmative defense of insanity after it has been established that the defendant was insane at the time of the commission of the crime. In addition, we hold that the Constitution is not violated by the entry of a judgment of NGRI without a trial on the merits and the affirmative defense of insanity. Our holding rests upon Colorado's long-standing precedent permitting a finding of NGRI without a jury trial and also because a judgment of NGRI operates as an acquittal of the charges. Hence, we reverse the judgment of the court of appeals and remand this case to that court to return it to the trial court for proceedings consistent with this opinion.

## Facts and Procedural History

¶ 3 Respondent Abel Gebre Laeke was charged with one count of criminal attempt to commit unlawful sexual contact and one count of indecent exposure as a result of events that the People allege occurred while he was a patient at the psychiatric ward at Denver Health Medical Center in 2004. At a preliminary hearing, the county court found probable cause to believe that Laeke committed the crimes and bound the charges over for proceedings in the district court. A trial court is required to hold a preliminary hearing if there has been no grand jury indictment or preliminary hearing prior to the entry of a plea of NGRI. § 16–8–103(3), C.R.S. (2011). This mandatory hearing operates as a "check" on the People by requiring that there be some showing of evidence that the accused in fact committed the acts al-

leged before proceedings pursuant to a plea of NGRI may begin.

¶ 4 At arraignment, Laeke's attorney sought to enter a plea of NGRI over Laeke's objection, pursuant to section 16–8–103(2), C.R.S. (2011). *See Hendricks v. People*, 10 P.3d 1231, 1240–41 (Colo.2000) (holding that, pursuant to section 16–8–103, a defendant does not have an absolute right to waive the assertion of a mental status defense when such defense is sought by counsel, and setting forth a balancing test for trial courts to rule whether the NGRI plea is "necessary for a just determination" under section 16–8–103(2)). The trial court orally reviewed the NGRI plea advisement with Laeke. Laeke objected to the NGRI plea entered by his attorney, and the court noted Laeke's objection but informed Laeke that he would be committed for purposes of a sanity examination. *See* § 16–8–103(2).

¶ 5 A doctor at the Colorado Mental Health Institute initially opined that Laeke was presently legally incompetent. After Laeke was restored to competency, the prosecution stated that it would stipulate to the plea of NGRI, thereby agreeing that Laeke was insane on the date of the commission of the offense. Laeke's counsel again asked the court to accept the NGRI plea over Laeke's objection. The court asked Laeke if he had anything he'd like to say, and he responded "I think [my attorney] summed it up for me but I'm hoping to prove that I didn't do this in trial." Based on the prosecution's stipulation and the mental health evaluations before it, the district court accepted the NGRI plea over Laeke's objection and then found Laeke NGRI. The court then committed Laeke to the Department of Human Services.

¶ 6 Laeke appealed, and the court of appeals held that Laeke was deprived of his right to a jury trial. The court of appeals held that Laeke had both a statutory and a constitutional right to a jury trial on the merits and his affirmative defense of insani-

ty. The court of appeals reasoned that a defendant has a right to a jury trial on an NGRI plea as well as a right to a jury trial on a felony charge. Concluding that those jury trial rights could not be waived by defense counsel's request to the trial court to accept the stipulation of Laeke's insanity at the time of the offense, that court held that a personal waiver by Laeke was the only way that a jury trial could be waived. Because Laeke did not waive his right to a jury trial, the court concluded that a constitutional violation had occurred. The court of appeals therefore reversed the district court's finding of NGRI and remanded the case for a jury trial. The People petitioned this court for certiorari review, which we granted.[1]

### Colorado's Insanity Defense

¶ 7 Our interpretation of Colorado's insanity statutes requires discussion of the General Assembly's statutory amendments made in the mid–1990s. When an insanity plea is entered for offenses committed before July 1, 1995, Colorado requires a bifurcated trial procedure whereby the issues of sanity and guilt are tried separately to different juries. § 16–8–104. The issue of sanity is tried first. *Id.* If a defendant is found to have been insane at the time of the commission of the offense, then no trial on the merits is held and the defendant is committed to the Department of Human Services. § 16–8–105(4). If the jury does not find defendant insane, then the case proceeds to a trial on the defendant's guilt. § 16–8–105(3).

¶ 8 Effective in 1996, the legislature promulgated section 16–8–101.5 and related amendments to Title 16, which created a unitary trial system to be used when the affirmative defense of insanity is raised in cases involving offenses committed on or after July 1, 1995. Under this procedure, a defendant's sanity and guilt are decided in one trial. § 16–8–105.5. The legislature ex-

---

1. We granted certiorari to review the following issues:

    1. Whether the court of appeals erred in holding that a defendant has a statutory right, under section 16–8–105.5, C.R.S. (2011), to a jury trial when the district court enters a plea of not guilty by reason of insanity over

the defendant's objection and the prosecution stipulates to that plea.

    2. Whether the defendant has a constitutional right to a jury trial when the district court enters a plea of not guilty by reason of insanity over the defendant's objection and the prosecution stipulates to that plea.

plicitly stated its intent in making these changes in section 16–8–101.3, explaining that its intent was to "combine the defense of not guilty by reason of insanity and the affirmative defense of impaired mental condition" and "to create a unitary process for hearing the issues raised by said affirmative defense to apply to offenses committed on or after July 1, 1995."

¶ 9 Under this unitary system, when the affirmative defense of NGRI has been raised, the jury is given a special verdict form containing interrogatories. § 16–8–105.5(3). The jury first decides the question of guilt, and if the jury concludes that guilt has been proven beyond a reasonable doubt as to one or more felony charges, then the jury does not answer the special interrogatories on insanity. § 16–8–105.5(3). The rationale of this provision rests upon the principle that to find guilt where an insanity defense is presented, the jury must find that the People have proven all of the elements of the offense, including the mens rea, and have also proven the defendant's sanity beyond a reasonable doubt, rendering the special interrogatories superfluous. If, however, the jury finds the defendant not guilty, then the jury must answer the special interrogatories as to whether it found the defendant not guilty solely because of the affirmative defense of NGRI. § 16–8–105.5(3). If the jury found the defendant NGRI, then the court must commit the defendant to the custody of the Department of Human Services. § 16–8–105.5(4).

### Analysis

¶ 10 Laeke argues that the court of appeals reached a correct result by holding that he had both a statutory and a constitutional right to a jury trial, although his arguments urge slightly different reasons than those relied upon by the court of appeals. Laeke contends that a statutory right to a jury trial on the merits and the affirmative defense of insanity is conferred on defendants who plead NGRI, based both upon the language of the statute and the change of procedure which occurred in 1996. He also argues that the trial court violated his constitutional rights by entering a judgment of NGRI without a jury trial. Upon review of our statutory regime for the affirmative defense of insanity, we disagree.

¶ 11 A defendant's right to a jury trial is an issue of law and therefore we review this issue de novo. *See People v. Pitts*, 13 P.3d 1218, 1222 (Colo.2000) ("[T]he trial court's legal conclusions are subject to de novo review."). The interpretation of Colorado statutes on the affirmative defense of insanity also presents a question of law and is subject to de novo review. *See Hendricks*, 10 P.3d at 1235. The first goal of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly. *People v. Terry*, 791 P.2d 374, 376 (Colo. 1990). To ascertain legislative intent, we first look to the statutory language. *Id.* Only if the scope of the statutory language is unclear do we look to pertinent legislative history. *Id.* Because the language in the insanity statutes is clear, we look only to that language to determine legislative intent and need not review legislative history.

#### 1.

¶ 12 Turning to Laeke's argument regarding the existence of a statutory right to a jury trial, Laeke initially contends that the court of appeals correctly construed Colorado's insanity statute to confer on Laeke a statutory right to a jury trial both on the merits and the affirmative defense of insanity, even where the People conceded that he was insane at the time of the commission of the offense. Laeke contends that by enacting the changes in procedure in 16–8–105.5, the legislature created a substantive statutory right to a jury trial. Laeke points to the new procedure in 16–8–105.5(3), whereby the jury "decide[s] first the question of guilt," instead of the previous procedure where the jury first considered sanity alone. Laeke argues that this change means the issue of guilt must be decided before a verdict of NGRI and therefore the trial court's finding of NGRI without first conducting a trial on guilt violated his statutory right to a jury trial. This argument is unavailing for two reasons.

¶ 13 First, Laeke is incorrect that under section 16–8–105.5(3), the trier of fact exclu-

sively considers the issue of guilt first. Integral to a finding of guilt is a consideration of the affirmative defense of insanity because to find guilt the jury must find that the People have proven beyond a reasonable doubt that the defendant possessed the requisite mens rea and that the defendant was sane at the time of the commission of the offense. See *People ex. rel. Juhan v. Dist. Court,* 165 Colo. 253, 439 P.2d 741, 747 (1968) ("Mental capacity to commit a crime is a material part of total guilt for there can be no crime without the mens rea.") (Emphasis omitted). The statute underscores this logic by providing that the special interrogatories relating to sanity are not answered if the jury has found defendant guilty. § 16–8–105.5(3).

¶ 14 Second, the plain language of the statute indicates that the legislative intent of the changes to the insanity statutes was not to create a substantive right to a jury trial. The wording regarding the legislature's intent in enacting the changes to the insanity statute, explicitly codified in section 16–8–101.3, is clear. The General Assembly's intent was:

> [T]o combine the defense of not guilty by reason of insanity and the affirmative defense of impaired mental condition into the affirmative defense of not guilty by reason of insanity and to create a unitary process for hearing the issues raised by said affirmative defense to apply to offenses committed on or after July 1, 1995.

§ 16–8–101.3. In other words, the 1996 changes were intended to create a unitary trial to replace the former system of bifurcated trials when the affirmative defense of insanity is raised. Nowhere in its stated intent does the legislature indicate an intent to create a new statutory right to a jury trial on the merits when the plea of NGRI is at issue.

¶ 15 Historically, we have construed the affirmative defense of insanity to permit a court to enter a finding of NGRI without first determining guilt. *See People v. Anderson,* 159 Colo. 124, 410 P.2d 164, 166–67 (1966) (affirming entry of directed verdict of NGRI where there was no contradiction to a court-appointed physician's testimony that defendant was insane at the time of the

crime). We presume the legislature is aware of existing case law precedent when it enacts or amends statutes. *Vigil v. Franklin,* 103 P.3d 322, 327–28 (Colo.2004). Hence, it is unreasonable to assume that the General Assembly intended to make a substantive change to the existing law by adding a statutory right to a trial on the merits and the affirmative defense of insanity when the prosecution has conceded that the defendant was insane at the time of the crime without stating as much in its codified statement of legislative intent.

¶ 16 Laeke also argues that he is entitled to a jury trial based on the language in section 16–8–105.5(2), which provides that upon the receipt of the report of the sanity examination, "the court shall immediately set the case for trial." However, the same wording existed in the earlier statute and remains codified in section 16–8–105. We have never construed this language to confer a substantive right to a jury trial when insanity is uncontested. Rather, section 16–8–105.5 (and its predecessor, section 16–8–105) simply set forth the procedure to be followed when an insanity defense has been raised— as indicated by their titles, "Procedure after plea for offenses committed on or after July 1, 1995" and "Procedure after plea for offenses committed before July 1, 1995." §§ 16–8–105, –105.5; *see Martinez v. Continental Enters.,* 730 P.2d 308, 313 (Colo.1986) ("Although the title of a statute is not dispositive of legislative intent, it may be used as an aid in construing a statute.").

¶ 17 Our fundamental responsibility when we interpret a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People,* 27 P.3d 846, 851 (Colo.2001). Although the legislature is free to confer a statutory right to a jury trial in cases where the People have conceded that the defendant was insane at the time of the commission of the offense, we decline to read such an intent into what was merely a procedural change in the statute, especially in light of the statutory language explicitly stating the legislature's intent which excludes such a purpose. Hence, we hold that a defendant does not possess a statutory right to a jury trial on the merits

**1116**

and the affirmative defense of insanity in circumstances where a plea of NGRI is entered and the People concede that the defendant was insane at the time of the commission of the offense.

### 2.

¶ 18 We next address the second issue of the court of appeals holding: whether the Sixth Amendment of the Constitution was violated when the trial court found Laeke NGRI without a trial on the merits or his affirmative defense of insanity in these circumstances. The Sixth Amendment right to a trial by jury requires "criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *People v. Hill,* 934 P.2d 821, 827 (Colo.1997) (quoting *U.S. v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). However, a judgment of NGRI does not constitute a conviction; rather, it operates as an acquittal of the charged offenses. *See Jacobs v. Carmel,* 869 P.2d 207, 209 (Colo.1994) (stating that a person committed after a finding of insanity "will not actually have been convicted of the crime charged"); *see also Parks v. Dist. Court,* 180 Colo. 202, 503 P.2d 1029, 1033 (1972) (holding that insanity is "a complete defense to the criminal charge").

¶ 19 Prior to the change in procedure under the insanity statutes, defendants found to be insane at the time of the commission of the offense during a sanity trial were routinely committed to the Department of Human Services without a merits trial. § 16–8–105(4); *People v. Hill,* 934 P.2d 821, 824 (Colo.1997) (noting that under section 16–8–105 "[i]f a defendant is found to have been insane at the time of the commission of the offense, no trial on the merits is held because the defendant is deemed not to be responsible for his acts."). We have never held that this bifurcated procedure violates a defendant's constitutional rights when a defendant is found to be insane at the time of the commission of the offense. The new unitary procedural framework does not warrant such a substantive change.

¶ 20 The fact that Laeke's NGRI plea was entered over his objection does not change this result. *See Les v. Meredith,* 193 Colo. 3, 561 P.2d 1256, 1259 (1977) (upholding the constitutionality of our insanity statutes where defendant was found NGRI after the court entered an NGRI plea over defendant's objection, but noting that it did not reach consideration of possible errors such as "the direction of the verdict . . .; any right of the defendant to show that he was in fact sane; and the issues of due process and equal protection as applied to both the commitment and the confinement."). The provision in our statute allowing the entry of an NGRI plea over a defendant's objection explicitly provides that the plea "shall have the same effect as though it had been voluntarily entered by the defendant himself." § 16–8–103(2). Hence, we hold that no constitutional violation occurred by the trial court's entry of a judgment of NGRI without a trial on the merits and the affirmative defense of insanity when the People have conceded that the defendant was insane at the time of the commission of the offense.

### Conclusion

¶ 21 For these reasons, we reverse the judgment of the court of appeals and remand the case to that court to return it to the trial court for proceedings consistent with this opinion.