IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL SALVO,<br><br>                    Appellant,<br><br>        v.<br><br>WASHINGTON CRIMINAL JUSTICE<br>TRAINING COMMISSION (WCJTC);<br>and the STATE OF WASHINGTON,<br><br>               Respondents. | No. 87146-3-I<br><br>DIVISION ONE<br><br>ORDER GRANTING<br>MOTION TO PUBLISH |

Respondent Washington Criminal Justice Training Commission moved to publish the opinion filed on January 12, 2026. Appellant Michael Salvo did not file an answer. The court has determined that the motion should be granted.

Now, therefore it is hereby

ORDERED that the opinion shall be published and printed in the Washington Appellate Reports.

For the Court:

_____
Judge

FILED
1/12/2026
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL SALVO, | No. 87146-3-I |
| Appellant, | DIVISION ONE |
| v. | |
| WASHINGTON CRIMINAL JUSTICE TRAINING COMMISSION (WCJTC); and the STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondents. | |

SMITH, J. — In November 2020, Salvo enrolled as a recruit in the Basic Law Enforcement Academy run by the Criminal Justice Training Commission (CJTC). In December that same year, Salvo complained to his supervisors about the behavior of fellow recruits. In January 2021, BLEA suspended Salvo. In June 2022, the Seattle Police Department (SPD) terminated Salvo's employment. Salvo initiated suit against CJTC, asserting retaliation claims under the Washington Law Against Discrimination, chapter 49.60 RCW. CJTC moved for dismissal under CR 12(c), claiming immunity under RCW 43.101.390, which the trial court granted. Salvo appeals. Finding no error, we affirm.

FACTS

In November 2019, SPD hired Michael Salvo. At the time, Salvo was 63 years old. A year later, Salvo entered the Washington Criminal Justice Training Center's ("CJTC" or "Commission") Basic Law Enforcement Academy

(BLEA).  In February 2020, Salvo was injured during work at BLEA and was temporarily removed from his current BLEA class.  In October 2020, Salvo returned to work and renewed his participation in BLEA.

On December 21, 2020, Salvo lodged a verbal complaint with his two supervisors at BLEA concerning inappropriate behavior by some of his fellow recruits.  Salvo was dissatisfied with the supervisors' response to his complaint.  Salvo claimed the supervisors "made age-based comments and supported the few recruits' behavior as acceptable 'Police Culture.' "  Less than two weeks after Salvo complained to his supervisors (sometime between December 21, 2020 and December 31, 2020), he filed two additional complaints: one to the Office of Police Accountability (OPA) and the other to his supervisor at the City of Seattle.  On December 31, Salvo met with CJTC staff to discuss his concerns about other recruits.

On January 6, 2021, Salvo e-mailed a complaint titled "the treatment of people" to Sue Rahr, the executive director of CJCT.  That same day, two CJTC commanders, Commander Alexander and Assistant Commander Hicks, requested memos from the individuals who were the subject of Salvo's complaints.  On January 11, 2021, CJTC suspended Salvo from training.  Two months later, in March 2021, CJTC sent an e-mail to SPD notifying it that CJTC was starting an investigation into Salvo's complaints.

SPD terminated Salvo's employment in June 2022, with the caveat that he could reapply for employment in the future.  In January 2024, Salvo initiated suit against CJCT for damages and injunctive relief.  CJTC moved for dismissal

under CR 12(c), claiming CJTC was immune pursuant to RCW 43.101.390. The court set a hearing date of July 26, 2024. On July 22, 2024, Salvo submitted his reply, contending the immunity granted pursuant to RCW 43.101.390 did not extend to intentional torts. Salvo also moved the court for additional time to amend his case, even though the deadline had passed. In his motion to amend, Salvo did not attach a proposed amended complaint. In its surreply, CJTC requested the court not consider Salvo's reply because it was untimely. CJTC also claimed Salvo's request to amend his complaint was futile. On July 26, 2024, the court heard the party's arguments, including Salvo's motion to amend, and subsequently issued an order granting CJTC's motion to dismiss. Salvo appeals.

ANALYSIS

Immunity

Salvo contends the trial court erred when it granted CJTC's motion to dismiss because his claims of retaliation and discrimination fall outside the statutory immunity of RCW 43.101.390. Because we do not find an exception for retaliation claims in the language of RCW 43.101.390, we affirm.

We review a trial court's dismissal under CR 12(c) de novo. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). We also review issues of statutory interpretation de novo. *Ent v. Wash. State Crim. Just. Training Comm'n*, 174 Wn. App. 615, 618, 301 P.3d 468 (2013).

Our primary objective when interpreting the meaning of a statute is to carry out the legislature's intent. *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d

3

1110 (2012).  First, we review the plain language of the statute.  *Gray*, 174 Wn.2d at 926.  "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' "  *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)).  While we may "look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them.' "  *Lake*, 169 Wn.2d at 526 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

If the plain meaning of the statute is unambiguous, our inquiry ends. *Killian v. Seattle Pub. Schs.*, 189 Wn.2d 447, 463, 403 P.3d 58 (2017).  But if the language of the statute is susceptible to more than one reasonable interpretation, "we may then look to legislative history as a further indication of legislative intent."  *State v. B.O.J.*, 194 Wn.2d 314, 323, 449 P.3d 1006 (2019).

The legislature created CJTC to "provide programs and standards for the training of criminal justice personnel."  Former RCW 43.101.020 (1974).[1]  CJTC has broad authority to establish and implement standards for the training and acceptance of its recruits.  *See* RCW 43.101.080.  For example, CJTC has the authority to "establish rules and regulations prescribing minimum standards relating to physical, mental, and moral fitness which shall govern the recruitment

---

[1] The statutory language for RCW 43.101.020, .080, .200, and .390 was revised effective June 25, 2021, subsequent to the incidents at issue in this opinion. The citations here are to the version in effect at the time of the underlying events during Salvo's enrollment at BLEA. The revisions have no impact on the outcome of this case.

of criminal justice personnel where such standards are not prescribed by statute or constitutional provision." RCW 43.101.080(18).

Under RCW 43.101.390, "[t]he commission and individuals acting on behalf of the commission are immune from suit in *any civil or criminal action* contesting or based upon proceedings or other official acts performed in the course of their duties in the administration and enforcement of this chapter." (Emphasis added.)

Only one Washington case, *Ent*, has addressed the immunity provision of chapter 43.101 RCW. In *Ent,* Scott Ent was a student at BLEA. 174 Wn. App. at 617. Ent was ordered by academy staff to stand at attention during an inspection and then to stand at "parade rest" for a graduation ceremony. *Id.* After over an hour of standing motionless, "Ent fainted, struck his head on the floor, and lost consciousness." *Id.* Ent filed a complaint against CJTC alleging a breach of reasonable care. *Id.* CJTC moved for judgment on the pleadings, alleging statutory immunity under RCW 43.101.390. *Id.* at 618. The court granted CJTC's motion and Ent appealed to this court. *Id.* at 622.

On appeal, we affirmed the trial court, noting under RCW 43.101.390, "[i]immunity unambiguously applies to chapter 43.101 RCW in its entirety." *Id.* at 619. We acknowledged broad immunity may lead to troubling scenarios, including that "CJTC might be immunized when an instructor embezzles funds or commits manslaughter, because RCW 43.101.390 protects it from both civil and criminal liability." *Id.* at 621. But, we also recognized that these scenarios "result

5

from a legislative policy choice" and "[w]hether or not we agree with broad immunity for the CJTC as a matter of public policy is irrelevant." *Id.*

The *Ent* court also addressed the scope of immunized activity after Ent argued inspection and ceremony were not enumerated duties within the CJTC's administration and enforcement powers. *Id.* at 622. The court concluded requiring attendance at special events is well within CJTC's discretion, because CJTC has wide latitude in their curriculum decisions. *Id.*

Here, Salvo contends *Ent* is not analogous because retaliation, unlike requiring attendance at a graduation ceremony, is not considered an "act[] performed in the course of their duties" as contemplated by RCW 43.191.390. But, similar to *Ent*, we must give deference to CJTC's decisions concerning the hiring, training, and termination of personnel, because these decisions are within CJTC's broad authority.[2] The plain language of RCW 43.191.390 does not carve out exceptions, and we cannot add words to the statute where the legislature has chosen not to include them. As the court stated in *Ent*, and we reiterate now,

---

[2] In *Cruz v. City of Spokane*, the Ninth Circuit discussed *Ent* and the scope of immunity granted to CJTC by RCW 43.101.390. 66 F.4th 1193, 1198 (9th Cir. 2023). The court noted, "[e]ven assuming that *Ent* holds that RCW 43.101.390(1) confers absolute immunity, the Washington Supreme Court has never held that such immunity extends to egregious or intentional conduct." *Id.* at 1198. The *Cruz* court certified the following question to the Washington Supreme Court: "What is the scope of immunity provided by RCW 43.101.390? Specifically, does the provision grant immunity for intentional torts committed in the course of administering the [BLEA]?" *Id.* Before the Washington Supreme Court could address the question, the parties settled and the Ninth Circuit withdrew the certified question. *Cruz v. City of Spokane*, 88 F.4th 1299 (9th Cir. 2023).

"any challenge to the wisdom of such broad immunity is an issue to be taken to the legislature." 174 Wn. App. at 621.

### Motion to Amend

Salvo contends the trial court erred when it denied his motion to amend his complaint because new evidence proved retaliation. We agree with CJTC that Salvo failed to produce new evidence or show how his amended complaint would be different from the original.

We review the denial of a motion to amend for abuse of discretion. *Karlberg v. Otten*, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012). A trial court abuses its discretion when its decision is "manifestly unreasonable or was exercised on untenable grounds or for untenable reasons." *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 484, 209 P.3d 863 (2009).

A plaintiff may amend their pleading once before a responsive pleading is served; otherwise, a party may amend their pleading "only by leave of court . . . and leave shall be freely given when justice so requires." CR 15(a). In addition to considering any prejudice amendment would impose on the nonmoving party, the court may also consider whether amendment is futile. *Larson v. Snohomish County*, 20 Wn. App. 2d 243, 286, 499 P.3d 957 (2021).

Here, despite Salvo not attaching a copy of his proposed pleading to his motion to amend, as required by CR 15, or timely filing the motion, the court considered his motion. When the court asked Salvo to provide "an offer of proof" as to what his proposed amendment would allege differently, Salvo replied that

the main claim would remain the same but he had "so much evidence" that he wanted to add.

Because Salvo's allegations in his amended complaint would have been the same as his original complaint, they would have remained subject to dismissal under CR 12(c). Accordingly, amendment would have been futile and the trial court did not abuse its discretion when it denied Salvo's motion to amend.

<u>Newly Discovered Evidence</u>

Salvo contends that the trial court erred by not considering newly discovered evidence, and that he has acquired public records after the dismissal which prove CJTC acted in bad faith. Salvo's claim fails because he presented no new evidence for the trial court to consider and his motion to this court to consider additional evidence did not meet the requirements of RAP 9.11(a).[3]

We review a trial court's decision to consider evidence for abuse of discretion. *Est. of McCartney v. Pierce County*, 22 Wn. App. 2d 665, 676-77, 513 P.3d 119 (2022). A trial court abuses its discretion when its decision is "manifestly unreasonable or was exercised on untenable grounds or for untenable reasons." *Cambridge Townhomes*, 166 Wn.2d at 484.

Generally, a trial court may only consider "the allegations contained in the complaint and may not go beyond the face of the pleadings." *Rodriguez v.*

---

[3] Salvo moved to submit additional evidence on appeal on October 18, 2025. We denied Salvo's motion on November 18, 2025, because he failed to satisfy the requirements of RAP 9.11(a) or to show that waiving the requirements of that rule would be in the interests of justice.

*Loudeye Corp.*, 144 Wn. App. 709, 725, 189 P.3d 168 (2008).  But, a trial court may take judicial notice of public records if "their authenticity cannot be reasonably disputed in ruling on a motion to dismiss."  *Rodriguez*, 144 Wn. App. at 725-26; ER 201.

Salvo now maintains on appeal that he has records "which conspicuously show collusion and retaliation" against him by CJTC.  Notably, Salvo does not contend he had knowledge of these records at the time the trial court ruled on CJTC's motion to dismiss.  In addition to not providing the actual records or their source, Salvo does not articulate how the newly discovered public records support his claim.  Even if the evidence did tend to support Salvo's discrimination claim, Salvo does not address how the evidence would affect CJTC's immunity under RCW 43.191.390.

The trial court could not have considered records that it did not know existed and, even if the records did exist, they had not been authenticated.  Additionally, Salvo cannot meet the requirements of RAP 9.11(a), allowing us to review newly discovered evidence on appeal.  Accordingly, we conclude the trial court did not abuse its discretion when it declined to consider Salvo's additional evidence.

Constitutional Claims

Salvo contends CJTC's actions violated his due process and equal protection rights because its actions lacked procedural safeguards, were done in

9

bad faith, and were the product of systemic discrimination.[4]  CJTC maintains these issues are not preserved for appeal and, even if we do address the issues, Salvo cannot show that a violation of his constitutional rights occurred.

Generally, this court will not review claims of error raised for the first time on appeal.  *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009).  RAP 2.5 provides exceptions for when a party may raise an issue for the first time on appeal, including "manifest error affecting a constitutional right."  Only if the defendant can show actual prejudice is the error "manifest," thus allowing review.  *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).  We may decline to consider arguments "that are unsupported by pertinent authority, references to the record, or meaningful analysis."  *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)).

Here, in his assignment of errors, Salvo claims the trial court misclassified CJTC's operational negligence and due process violations as "discretionary acts" and disregarded evidence of systemic institutional bad faith.  While these claims raise apparent constitutional issues, Salvo's claims are unsupported by the record or any meaningful analysis.  Salvo makes broad assertions in his argument, such as CJTC failed to enforce anti-harassment policies and conducted a "sham investigation," but provides no evidence or citations to the record to support these claims.  Notably, Salvo stated in his complaint that CJTC

---

[4]  Salvo also raises claims against the Equal Employment Opportunity Commission (EEOC).  How those claims are relevant to the current appeal is not clear, as EEOC is not a party to this action; thus, we do not address them.

did investigate his concerns and the executive director, Rhar, communicated to Salvo that she was satisfied with the investigation.  Salvo also contends he was not afforded notice or a hearing before he was suspended, but, again, cites no support for these allegations.[5]

Because Salvo provides insufficient support and analysis for his arguments and has not shown any that CJTC's actions were outside of its statutory authority, we find no error.

### Additional Claims

For the first time on appeal, Salvo makes claims of vicarious liability, defamation, intentional and negligent infliction of emotional distress, and religious discrimination.  Because Salvo did not raise these arguments below, they are not properly before this court.  Additionally, Salvo presents no evidence with these claims to overcome CJTC's broad immunity under RCW 43,191.390, as discussed *supra*.  Accordingly, we decline to address these issues.

We affirm.

_____

WE CONCUR:

_____, ACJ    _____

_____

[5] Under RCW 43.101.105, CJTC would only be required to conduct a hearing if one was timely requested by Salvo.  Salvo does not contend he requested a hearing.