2012 COA 51

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Amber Lee TORREZ, Defendant–
Appellant.**

**No. 09CA0511.**

Colorado Court of Appeals,
Div. VI.

March 29, 2012.

Rehearing Denied May 24, 2012.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

¶ 1 Defendant, Amber Lee Torrez, appeals the Jefferson County District Court's order granting her 86 days of presentence confinement credit (PSCC) for the time she was physically confined in Jefferson County prior to being sentenced and denying her PSCC for the 1,493 days she was confined in Denver and at the Colorado Mental Health Institute at Pueblo (CMHIP).

I. Summary

¶ 2 In this appeal, we apply the PSCC statute to novel circumstances. Defendant was confined in Denver on separate Denver and Jefferson County arrest warrants. She was subsequently ordered to be confined at CMHIP by both Denver and Jefferson County. After a Denver jury found her not guilty by reason of insanity (NGRI), Denver again ordered her to be confined at CMHIP.

¶3 The people argue that the rationale underlying several supreme court cases decided in the 1980s indicates that defendant is not entitled to additional PSCC toward her Jefferson County sentence for the time she was confined in Denver and at CMHIP prior to the NGRI verdict. However, that precedent was based on an earlier version of the PSCC statute, and a supreme court case decided in 2003 has undermined a key segment of the rationale supporting the earlier cases. Nevertheless, we conclude that, because the supreme court has not squarely interpreted the PSCC statute since 2003, the earlier cases remain binding precedent in all other respects, and therefore defendant is not entitled to PSCC for her pre-NGRI confinement. However, even under that precedent, defendant is entitled to PSCC for her confinement at CMHIP after the NGRI and before being sentenced by Jefferson County.

¶4 Accordingly, as further explained below, we affirm in part, reverse in part, and remand to the district court with instructions to grant defendant PSCC for the time she was confined at CMHIP between the Denver NGRI verdict and her sentencing in Jefferson County.

## II. Facts and Procedural History

¶5 On March 23, 2004, Jefferson County issued a warrant for defendant's arrest based on an incident in which she assaulted a person. Six days later, defendant was arrested in Denver on the Jefferson County warrant and also on murder charges for two homicides that occurred in Denver. She was held in Denver without bond pending resolution of the Denver murder charges.

¶6 In December 2004, the Denver District Court determined that, based on the results of a competency evaluation, defendant was incompetent to proceed to trial. The court relocated her to CMHIP.

¶7 On March 7, 2005, the Jefferson County District Court made a preliminary finding that defendant was incompetent to proceed to trial. The court finalized the finding on June 27, 2005 and also ordered that she be confined at CMHIP.

¶8 On July 26, 2005, the Denver District Court found defendant competent to proceed on the murder charges and relocated her to Denver "on leave" from CMHIP to stand trial. After a jury found defendant NGRI on August 28, 2006, the Denver District Court sent her back to CMHIP, where she was to remain until her sanity was restored and she could be released under section 16–8–115(2)(b), C.R.S.2011.

¶9 Throughout defendant's Denver trial proceedings, the Jefferson County order committing defendant to CMHIP remained in effect. Nevertheless, defendant was temporarily transported to Jefferson County on numerous occasions based on writs issued by Jefferson County prosecutors.

¶10 On January 25, 2007, the Jefferson County District Court found defendant competent to proceed to trial, and she entered an NGRI plea. On June 3, 2008, after a psychological evaluation indicated that she was sane on the date of the Jefferson County assault, defendant entered a guilty plea. On July 25, 2008, the Jefferson County District Court sentenced defendant to ten years in the Department of Corrections (DOC) and granted her 86 days PSCC for the time she had been physically present in Jefferson County.

¶11 Defendant filed a motion requesting the Jefferson County District Court to award her 1,579 days PSCC on her Jefferson County sentence to cover the entire period of her confinement between March 2004 to July 25, 2008, including the time she was confined in Denver and at CMHIP. The court denied the motion.

¶12 Defendant appeals.

## III. Defendant's Entitlement to PSCC

¶13 Defendant contends that the Jefferson County District Court erred in granting her only 86 days PSCC, representing the time she was physically confined in Jefferson County. She asserts that she is also entitled to receive PSCC for the 1,493 days she was confined in Denver and at CMHIP. We conclude that, despite the current PSCC statute's plain language, binding precedent dictates that for the period defendant was confined prior to the Denver NGRI verdict,

the Jefferson County District Court properly granted defendant PSCC only for the time she was physically confined in Jefferson County. However, once the Denver criminal proceeding against defendant ended—that is, when the Denver jury found defendant NGRI—binding precedent no longer barred defendant from receiving PSCC on the Jefferson County sentence for the time she continued to be confined at CMHIP because there was no longer a separate and independent criminal proceeding pending against her. Accordingly, the Jefferson County District Court erred in denying defendant PSCC for the period of confinement between the Denver NGRI verdict and imposition of the Jefferson County sentence.

■ ¶ 14 Whether a district court properly awarded PSCC is a legal question we review de novo. *People v. Wallin,* 167 P.3d 183, 191 (Colo.App.2007).

### A. Plain Language Analysis

¶ 15 We begin our analysis by looking only to the plain language of the current statute governing PSCC, section 18–1.3–405, C.R.S. 2011, which applies to defendant's claim. *See People v. Norton,* 63 P.3d 339, 343–45 (Colo. 2003) (interpreting section 18–1.3–405 by looking first to plain language). In relevant part, it provides:

> A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement.

Thus, by the current PSCC statute's plain terms, a defendant is entitled to PSCC if he or she was confined "for an offense prior to the imposition of [the] sentence for [that] offense."

¶ 16 Here, defendant was arrested on warrants from both Denver and Jefferson County. Moreover, according to the Jefferson County investigator, she was held in Denver on the Jefferson County warrant. Thus, defendant was confined in Denver because of proceedings in both counties and therefore, under the plain language of the current PSCC statute, defendant's Denver confinement was "for [the Jefferson County] offense

prior to imposition of [the] sentence for [that] offense." § 18–1.3–405. Accordingly, under the statute's plain language, she appears to be entitled to PSCC on her Jefferson County sentence for the time she was confined in Denver.

¶ 17 Likewise, under the PSCC statute's plain language, defendant appears to be entitled to PSCC on her Jefferson County sentence for the time she was confined at CMHIP. As discussed, she was confined in Denver on warrants from both counties when Denver sent her to CMHIP; and while she was there, the Jefferson County District Court acknowledged her confinement there and entered an additional order committing her to CMHIP. Thus, defendant's confinement at CMHIP was "for [the Jefferson County] offense prior to imposition of [the] sentence for [that] offense." § 18–1.3–405. And, because confinement at CMHIP qualifies for PSCC under the statute, defendant appears to be entitled, under the current PSCC statute's plain language, to PSCC for the time she was confined at CMHIP. *See People v. McGraw,* 30 P.3d 835, 840 (Colo. App.2001) (confinement at CMHIP for the same offenses for which a defendant is later sentenced qualifies as "confinement" under PSCC statute).

¶ 18 Without a doubt, defendant's confinement in Denver and at CMHIP was not solely because of the Jefferson County offenses. Rather, she was confined because of the alleged offenses she committed in both Denver and Jefferson County. However, the plain language of the PSCC statute does not require that an offense be the exclusive or so-called "primary" cause of a defendant's confinement before he or she can receive PSCC. Rather, the statute only requires that the confinement be "for [the] offense" for which the defendant is sentenced. § 18–1.3–405.

¶ 19 Nevertheless, we conclude that because of binding supreme court precedent, as explained below, defendant is not entitled to PSCC on her Jefferson County sentence for the time she was confined in Denver and at CMHIP prior to being found NGRI on the Denver murder charges. However, once the Denver criminal proceedings against her

ended, that binding precedent no longer barred her from receiving PSCC. Accordingly, the Jefferson County District Court properly denied defendant PSCC for the time she was confined in Denver and at CMHIP prior to the NGRI verdict, but erroneously denied her PSCC after that point and until she was sentenced in Jefferson County.

### B. Binding Precedent

¶ 20 In 1972, the General Assembly enacted Colorado's first PSCC statute, which provided in relevant part:

In sentencing a defendant to imprisonment the sentencing judge shall take into consideration that part of any presentence confinement which the defendant has undergone with respect to the transaction for which he is to be sentenced.

Ch. 44, sec. 1, § 39–11–306, 1972 Colo. Sess. Laws 249; *see Schubert v. People,* 698 P.2d 788, 792 (Colo.1985).

¶ 21 In 1979, the General Assembly amended the PSCC statute (the 1979 statute), making PSCC mandatory rather than discretionary. As relevant here, the statute provided:

A person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence for the entire period of such confinement.

Ch. 157, sec. 7, § 16–11–306, 1979 Colo. Sess. Laws 665–66; *see Schubert,* 698 P.2d at 793. The 1979 statute thus no longer tied the confinement to the sentence for which PSCC was sought.

¶ 22 In *Schubert,* 698 P.2d at 792–95, our supreme court considered whether, despite the 1979 statute's amended terms, a defendant may only receive PSCC if his or her confinement was attributable to the criminal transaction for which the defendant was sentenced and for which PSCC was sought. The court concluded that there must be a "substantial nexus" between the charge or conduct and the period of confinement for which PSCC is sought. *Schubert,* 698 P.2d at 795. The court explained:

While causation in this context does not mean that the charge or conduct for which the sentence is to be imposed must be the exclusive cause of the offender's confinement, it does mean that there must be a substantial nexus between such charge or conduct and the period of confinement for which credit is sought. If, for example, multiple counts or cases are concurrently filed against a defendant in the same jurisdiction, and the defendant remains confined in that jurisdiction on all charges due to his inability to post bail, each charge would appropriately be considered a cause of the defendant's presentence confinement.

*Id.*

¶ 23 In creating the substantial nexus test, the court stated that the "obvious purpose" underlying the 1979 statute was to remedy

the unequal treatment of indigent offenders who, due to their inability to post bail and the statutory discretion reposed in sentencing courts to grant or refuse credit for presentence confinement, would serve longer periods in jail than their wealthier counterparts who were able to avoid presentence confinement by posting bail and thereby secure their presentence freedom.

*Schubert,* 698 P.2d at 794. Thus, the court noted:

In the case of an offender confined on some other charge or conviction unrelated to the charge or conduct for which he is to be sentenced, the presentence deprivation of liberty is not attributable to the offender's financial inability to post bail in the case in which the sentence is ultimately imposed, but to a criminal matter which constitutes a separate and independent cause of his confinement.

*Id.*

¶ 24 In a concurring opinion, Justice Lohr criticized the majority's declaration of the 1979 statute's "obvious purpose." He stated:

I know of no support for that conclusion, the majority cites none, and to me it is not self-evident. The purpose of the legislation could have been to eliminate perceived disparities in the manner in which the statutory discretion was being

exercised by trial judges across the state, to implement a decision that day-for-day credit would promote the perception of fairness of sentencing in the eyes of the public and of the persons upon whom sentences are imposed, or to accomplish some other objective not within our ken.

*Schubert,* 698 P.2d at 797 (Lohr, J., concurring).

¶ 25 One year after *Schubert* was decided, the General Assembly again amended the PSCC statute (the 1986 statute), expressly adding language requiring a causal nexus between a defendant's confinement and the PSCC sought. In relevant part, the statute provided:

> A person who is confined *for an offense* prior to the imposition of sentence *for said offense* is entitled to credit against the term of his sentence for the entire period of such confinement.

Ch. 124, sec. 3, § 16–11–306, 1986 Colo. Sess. Laws 734 (amended portions emphasized); *see Massey v. People,* 736 P.2d 19, 21 n. 5 (Colo.1987).

¶ 26 In 1987, the supreme court considered, under the earlier 1979 statute, whether defendants in two cases—*Massey* and *Freeman*—were entitled to PSCC for time they were confined in jurisdictions other than the jurisdiction where they were seeking PSCC. *Massey,* 736 P.2d at 21–23; *People v. Freeman,* 735 P.2d 879, 880–81 (Colo.1987).

¶ 27 In *Massey,* the defendant was arrested in Mesa County on two unrelated warrants from Pitkin County and Mesa County. *Massey,* 736 P.2d at 20. He remained incarcerated in Mesa County for 181 days while being periodically transferred to Pitkin County for court appearances. *Id.* After pleading guilty in both counties, he was sentenced to two years probation in both counties. *Id.* Eight months later, he was arrested in Pitkin County for violating both probationary sentences, and he was confined in Pitkin County for 78 days while proceedings were pending. *Id.*

¶ 28 The district court in Pitkin County sentenced the defendant to 18 months in the DOC and granted him 78 days PSCC. *Id.*

The district court in Mesa County sentenced him to 27 months in the DOC, with the sentence to run concurrently with the Pitkin County sentence, and granted him 181 days PSCC. *Id.* The defendant sought 181 additional PSCC days on his Pitkin County sentence, which the court denied. *Id.*

¶ 29 In affirming the denial of the defendant's PSCC request, the supreme court reiterated that the PSCC statute's purpose was to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, were confined longer than their wealthier counterparts. *Id.* at 21. The court then concluded that, for four reasons, there was no substantial nexus between the defendant's Mesa County confinement and the charges filed against him in Pitkin County: (1) the Mesa County charges and Pitkin County charges were filed in separate judicial districts; (2) the Mesa County charges and Pitkin County charges arose out of separate criminal transactions; (3) the example discussed in *Schubert* of multiple counts or cases concurrently filed against a defendant in the same jurisdiction did not apply; and (4) the defendant did not prove that the Pitkin County charges "prevented [his] release from the Mesa County jail or contributed to his confinement outside of Pitkin County." *Id.* at 23.

¶ 30 Because a Pitkin County Sheriff's deputy testified that the defendant was imprisoned in Mesa County "on a Pitkin County warrant as well as a Mesa County warrant," we read the court's fourth reason as denying PSCC for the defendant's Mesa County confinement because he would have been confined there regardless of the Pitkin County charges. That is, he would have been confined in Mesa County because of the separate and independent Mesa County criminal proceeding against him. *See, e.g., Schubert,* 698 P.2d at 794 ("In the case of an offender confined on some other charge or conviction unrelated to the charge or conduct for which he is to be sentenced, the presentence deprivation of liberty is not attributable to the offender's financial inability to post bail in the case in which the sentence is ultimately imposed, but to a criminal matter which con-

stitutes a separate and independent cause of his confinement.").

¶ 31 Justices Lohr and Dubofsky dissented from the *Massey* majority opinion, reasoning as follows:

> In the present case, the Pitkin County charges were as much an actual cause of the defendant's confinement as were the Mesa County charges. The record discloses that his arrest on September 15, 1982, was based upon both warrants. It is logically inconsistent and contrary to common sense to say that one warrant, the Mesa County warrant, was the basis of his confinement but that the other warrant, the Pitkin County warrant, was not. The defendant was confined in the Mesa County jail as a direct result of both warrants, not only the Mesa County warrant. Under these circumstances, the fact that the defendant was confined in the Mesa County jail instead of the Pitkin County jail simply as a matter of administrative convenience should have no bearing on whether he should receive presentence confinement credit on the Pitkin County sentence.
>
> I also disagree with the majority's wholly artificial distinction between concurrent sentences for multiple charges filed in the same jurisdiction and concurrent sentences for multiple charges filed in different jurisdictions. I can perceive no logical or principled reason, and none is advanced by the majority, for treating the latter situation different[ly] from the former in determining presentence confinement credit. In neither case is there a danger of granting a defendant duplicative credit—one of the primary concerns underlying our interpretation of section 16–11–[3]06 in *Schubert v. People,* 698 P.2d at 794–95. The question is not whether the charges are related to each other in the sense that they are filed in the same jurisdiction, but whether the charges are both related to, or have a "substantial nexus" to, the confinement.
>
> In summary, I believe that the Pitkin County warrant was as much an actual cause of the defendant's confinement as was the Mesa County warrant. Also, I believe that there is no logical basis to award a defendant presentence confine-

ment credit on concurrent sentences for multiple charges in a single jurisdiction but not on concurrent sentences for multiple charges filed in different jurisdictions, at least so long as there is no possibility of awarding duplicative credit.

*Massey,* 736 P.2d at 24 (Lohr, J., dissenting) (citation omitted).

¶ 32 In *Freeman,* our supreme court held that a defendant was not entitled to PSCC on his Jefferson County sentence when he was confined in Denver on Denver charges and also on a later-issued warrant by Jefferson County. The court reasoned that there was not a substantial nexus between the defendant's confinement in Denver and the Jefferson County warrant because the defendant "ha[d] not established that the issuance of the Jefferson County arrest warrant delayed the resolution of the Denver County charges, prevented the defendant's release from the Denver County jail, or contributed in any way to his confinement outside of Jefferson County." *Freeman,* 735 P.2d at 881.

¶ 33 As with *Massey,* we read the court's analysis in *Freeman* as denying PSCC for time defendants are confined in jurisdictions other than where they seek PSCC if there was a separate and independent criminal proceeding that caused their confinement in that other jurisdiction. *See id.; Massey,* 736 P.2d at 22–23; *Schubert,* 698 P.2d at 794. Moreover, as evidenced by *Freeman*'s outcome, it is irrelevant that a defendant may not receive PSCC in any jurisdiction. Indeed, the *Freeman* defendant did not receive PSCC in any jurisdiction for the time he was confined in Denver. *Freeman,* 735 P.2d at 881.

¶ 34 Justices Lohr and Dubofsky dissented from the *Freeman* majority, reasoning as follows:

> I would conclude that causation is amply established. The defendant was held in jail in Denver because of two charges, one filed in Denver and the other in Jefferson County. Dismissal of either would not have gained freedom for the defendant. Satisfying bail requirements for either alone would also not have resulted in the defendant's release. Under these circumstances, I am persuaded that there is a substantial nexus between

the Jefferson County charge and the period of the defendant's confinement subsequent to the issuance of the Jefferson County warrant.

*Freeman*, 735 P.2d at 882 (Lohr, J., dissenting).

¶ 35 In three subsequent cases, the supreme court reiterated the "substantial nexus" test when citing the 1986 statute, which had already been amended to include the language entitling a defendant to PSCC when he or she was confined *"for an offense prior to the imposition of* sentence *for said offense."* Ch. 124, sec. 3, § 16–11–306, 1986 Colo. Sess. Laws 734 (amended portions emphasized); *Beecroft v. People*, 874 P.2d 1041, 1044 (Colo.1994); *Brinklow v. Riveland*, 773 P.2d 517, 521 (Colo.1989); *People v. Johnson*, 797 P.2d 1296, 1298 (Colo.1990).

¶ 36 The statute was then relocated to section 18–1.3–405 in 2002. Ch. 318, sec. 2, § 18–1.3–405, 2002 Colo. Sess. Laws 1408 (effective Oct. 1, 2002).

¶ 37 In 2003, the supreme court, in addressing a different issue,[1] cited Justice Lohr's concurrence in *Schubert* and noted that the *Schubert* majority "cited no legislative authority for its interpretation" that the PSCC statute was amended in 1979 to address the lengthier confinement periods that indigent offenders were serving because they could not post bail. *Norton*, 63 P.3d at 348 (quoting from Justice Lohr's special concurrence that he knew of "no support for that conclusion" and that the purpose of the amendment might just as likely have been "to accomplish some other objective not within our ken"). The court then declined to follow the *Schubert* majority's reasoning insofar as it related to the case at hand. *Id.* Accordingly, the court undermined part of the reasoning given by the majority in *Massey. See Massey*, 736 P.2d at 22. However, *Massey* and *Freeman* remain valid in all other respects and therefore remain binding on our resolution here.

## C. Applying Binding Precedent

■ ¶ 38 Without further guidance from the supreme court since *Norton* concerning the current 1986 version of the statute, the majority holdings in *Massey* and *Freeman*—which were based on the previous 1979 version of the statute, but have been cited in supreme court cases involving the current 1986 version of the statute—dictate that defendant is not entitled to PSCC on her Jefferson County sentence for the time she was confined in Denver and at CMHIP prior to the NGRI verdict in Denver. Like the defendant in *Massey*, defendant here was arrested on warrants from two counties (Denver and Jefferson) and was confined in one of the counties (Denver). *See Massey*, 736 P.2d at 23. Further, like the *Massey* defendant's charges, defendant's Denver and Jefferson County charges "arose out of separate criminal transactions." *See id.*

¶ 39 Moreover, like the defendants in both *Massey* and *Freeman*, defendant was confined in Denver and at CMHIP prior to the NGRI verdict because of a separate and independent criminal proceeding pending against her (the Denver murder charges). As discussed in part III.B., we read *Massey* and *Freeman* as denying PSCC for time defendants are confined in jurisdictions other than where they are seeking PSCC if there was a separate and independent criminal proceeding that was causing their confinement in that other jurisdiction. *See Massey*, 736 P.2d at 22–23; *Freeman*, 735 P.2d at 880–81; *see also Schubert*, 698 P.2d at 794 ("In the case of an offender confined on some other charge or conviction unrelated to the charge or conduct for which he is to be sentenced, the presentence deprivation of liberty is not attributable to the offender's financial inability to post bail in the case in which the sentence is ultimately imposed, but to a criminal matter which constitutes a separate and independent cause of his confinement.").

¶ 40 Thus, before the Denver jury returned the NGRI verdict, defendant would have been confined in Denver and at CMHIP

---

1. The court consider whether a mandatory parolee who is incarcerated after committing a new crime while on parole may have his or her PSCC applied toward the sentence resulting from the new charge, or must have it apply toward the sentence for which he or she was on parole. *Norton*, 63 P.3d at 341.

regardless of whether she was also charged—or committed to CMHIP—by Jefferson County. Therefore, according to the majority holdings in *Massey* and *Freeman,* defendant is not entitled to PSCC for the time she was confined in Denver and at CMHIP prior to the NGRI verdict.

■ ¶ 41 Nevertheless, once the Denver jury returned the NGRI verdict on defendant's murder charges, defendant was acquitted, and the Denver criminal proceedings ended. *See People v. Laeke,* 2012 CO 13, ¶ 18, 271 P.3d 1111 ("a judgment of NGRI does not constitute a conviction; rather, it operates as an acquittal of the charged offenses"); *People v. Galves,* 955 P.2d 582, 583 (Colo.App.1997). Thus, from that point forward, the only criminal proceeding for which defendant was being confined was the single Jefferson County case. As there were no longer criminal proceedings pending against defendant in multiple jurisdictions, or even multiple cases, the majority's reasoning and holdings in Massey and Freeman no longer barred defendant from receiving PSCC. Accordingly, defendant is entitled to PSCC for the time she was confined at CMHIP between the Denver NGRI verdict and her sentencing in Jefferson County.

### D. No Duplicative PSCC and Two Confinement Orders to CMHIP

¶ 42 Defendant nonetheless argues that, for two reasons, she is entitled to PSCC for the time she was confined at CMHIP and in Denver prior to the Denver NGRI verdict: (1) there is no possibility that she can receive duplicative credit because she was found NGRI on the Denver murder charges; and (2) Jefferson County, as well as Denver, ordered her to be confined at CMHIP. We are not persuaded.

#### 1. No Possibility of Duplicative PSCC

¶ 43 Defendant correctly notes that she has no sentence in Denver against which PSCC can be applied because, as discussed, the Denver jury's NRGI finding amounts to an acquittal of the murder charges. *Laeke,* ¶ 18; *Galves,* 955 P.2d at 583 (a "sentence is not imposed upon a defendant found not

guilty by reason of insanity"). Thus, there is no possibility that defendant could receive duplicative PSCC.

¶ 44 Defendant also correctly notes that in *Schubert,* the supreme court stated that awarding a defendant duplicative PSCC is

> the very antithesis of the purpose which the legislature sought to achieve in enacting the 1979 version of [the PSCC statute]—that is, to eliminate the unequal treatment resulting to indigent offenders who might otherwise receive no credit for presentence confinement with respect to the charge or conduct for which they are sentenced.

*Schubert,* 698 P.2d at 795. However, as discussed, the supreme court in *Norton* appeared to reject that presumed purpose. *Norton,* 63 P.3d at 348. Moreover, although it is both logical and commonsensical that a defendant should not receive duplicative PSCC when serving consecutive sentences, the statute does not include such a general prohibition. *See id.* at 343–45 (court conducted plain language analysis of § 18–1.3–405 and noted that § 18–1.3–405's final sentence, not at issue here, prohibits the award of duplicative PSCC in the specific situation where an inmate commits another crime while incarcerated or while on discretionary parole).

¶ 45 However, even if we assume that the statute included such a prohibition, it would be irrelevant here for two reasons: (1) neither the PSCC statute nor case law provides that a defendant is entitled to PSCC simply because there is no possibility of receiving duplicative PSCC; and (2) the supreme court's reasoning in *Massey* and *Freeman*—as well as *Freeman*'s facts—preclude defendant from receiving PSCC on her Jefferson County sentence prior to the Denver NGRI verdict.

¶ 46 As discussed in part III.B. of this opinion, we read the court's analysis in *Massey* and *Freeman* as denying PSCC for time defendants are confined in jurisdictions other than where they are seeking PSCC if, as here, there was a separate and independent criminal proceeding that caused their confinement in those other jurisdictions. *See*

*Massey,* 736 P.2d at 22–23; *Freeman,* 735 P.2d at 880–81; *see also Schubert,* 698 P.2d at 794. Moreover, just as the defendant in *Freeman* ultimately did not receive PSCC in either jurisdiction for the time he was confined in Denver, it is likewise inconsequential here that there is no possibility that defendant will receive duplicative PSCC. *See Freeman,* 735 P.2d at 881.

### 2. Confinement Orders to CMHIP by Denver and Jefferson County

¶ 47 Defendant correctly notes that Jefferson County, as well as Denver, ordered her to be confined at CMHIP prior to the Denver NGRI verdict. However, that fact does not entitle her to PSCC on her Jefferson County sentence. As discussed, each was a separate and independent criminal proceeding causing her confinement at CMHIP and, under our reading of *Massey* and *Freeman,* she is therefore not entitled to PSCC on her Jefferson County sentence or Denver sentence (if there had been one).

¶ 48 We recognize that this reasoning precludes defendants from receiving PSCC any time they are ordered to CMHIP by multiple jurisdictions—a result that appears at odds with the current PSCC statute's plain language. However, despite (1) *Norton*'s criticism of *Schubert*'s statement of statutory purpose, (2) the dissenting opinions in *Freeman* and *Massey,* and (3) the concurring opinion in Schubert, those cases otherwise remain as binding precedent.

¶ 49 Accordingly, we conclude that the Jefferson County District Court properly denied her PSCC for the time she was confined in Denver and at CMHIP prior to the Denver NGRI verdict. Once the Denver criminal proceedings pending against her ended because of the NGRI verdict, binding precedent no longer barred her from receiving PSCC. Therefore, the Jefferson County District Court erred in denying defendant PSCC for the days she was confined between the Denver NGRI verdict and her sentencing in Jefferson County.

¶ 50 The order is reversed as to defendant's PSCC for the time she was confined at CMHIP between the Denver NGRI verdict and her sentencing in Jefferson County, and the case is remanded to the district court with instructions to grant that PSCC. The order is affirmed in all other respects.

Judge LICHTENSTEIN and Judge BOORAS concur.